IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES PATTERSON,
    Plaintiff,

v.

CIVIL ACTION NO. 18-CV-4411

CORRECTIONS EMERGENCY
RESPONSE TEAM (CERT), *et al.*,
    Defendants.

FILED
NOV 29 2018
KATE BARKMAN, Clerk
By___ MEMORANDUM Dep. Clerk

**TUCKER, J.**                                                            **NOVEMBER 28, 2018**

Plaintiff James Patterson, a prisoner currently incarcerated at SCI-Phoenix, brings this *pro se* civil action pursuant to 42 U.S.C. § 1983, against the Corrections Emergency Response Team (CERT), Secretary John Wetzel, Superintendent Tammy Ferguson, and John/Jane Doe members of CERT. He primarily alleges that his constitutional rights were violated in connection with the destruction of his property. Patterson seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Patterson leave to proceed *in forma pauperis* and dismiss his Complaint for failure to state a claim without prejudice to amendment.

**I.    FACTS**

Patterson's claims stem from the Pennsylvania Department of Corrections' movement of prisoners from the now defunct SCI-Graterford to the newly constructed SCI-Phoenix in July of 2018. According to the Complaint, CERT is a team of prison staff that, under the direction of Wetzel and Ferguson, moved the legal and personal property of inmates from SCI Graterford to SCI Phoenix between July 12th and July 15th. Patterson alleges that CERT

> threw Plaintiff and Graterford Prisoners' legal materials and paperwork in the trash; wrote/drew nazi signs, nigger and penises on photos of dead relatives; stole wedding bands/rings, necklaces/chains, watches, sneakers and other value [sic] property such

1

as art work and art supplies; broke property; placed remotes in vaseline and performed all other sorts of improper, hateful, unlawful and destructive acts to Plaintiff/Graterford Prisoners' personal property that was supposed to be moved from SCIG to PHX.

(Compl. at 6-7.)[1]

Patterson alleges that with regard to his property, CERT either misplaced, threw away, or stole his "legal work (e.g., discovery materials, notes of testimony, copies of pleadings, arrest record, rulings and opinions in CP-51-CR-001608-2011) and personal property (e.g., hair lotions, petroleum jellys [sic], deodorants, cold medications, commissary food items, personal laundry [socks, underwear, t-shirts, sweat clothing])."[2] (*Id.* at 7.) He contends that he requires the lost legal materials "as he continues to challenge his criminal conviction and sentence and with various Appellate Courts requiring him to reproduce or to produce the original of certain pleadings, documents, opinions and rules," and that he does not have the money to pay for new copies. (*Id.*) Patterson also notes that CERT staff violated DOC policy requiring prisoners to be present when their property is searched or inventoried, and which also requires documentation.

According to Patterson, Superintendent Ferguson suspended the grievance process at SCI Phoenix due to the large number of grievances filed in the wake of CERT's conduct. He also alleges that the DOC is handling settlements for those claims "in phases" but that inmates who are not included in those phases have no remedy because they were instructed to use the grievance process. (*Id.* at 6.) Patterson adds that Ferguson "took funds for programs and

---

[1] The Court adopts the pagination assigned to the Complaint by the CM-ECF system.

[2] A search of the Pennsylvania Unified Judicial System records reflects that docket number CP-51-CR-0001608-2011 relates to a criminal case against a defendant by the name of Robert McGurk. It appears Patterson intended to refer to CP-51-CR-0010608-2011. That docket reflects that in 2012, Patterson pled guilty to robbery and conspiracy and that he was sentenced to a term of imprisonment. No motions are pending on the docket. A search of this Court's docket does not reveal any *habeas* petitions filed by Patterson.

2

services for Prisoners for the year from the IGWF (Inmate General Welfare Fund) to pay small settlements to Prisoners who accepted the settlements and signed waivers to any future legal action." (*Id.* at 7.) Patterson explains that he has not accepted a settlement offer and "has not been reimbursed for the hateful and criminal acts of CERT committed on July 12-15 to his personal property and then covered-up by Wetzel, Ferguson and Does." (*Id.* at 8.)

Based on those allegations, Patterson brings claims pursuant to 42 U.S.C. § 1983 for violation of his constitutional rights. Specifically, Patterson alleges that:

> CERT, Wetzel, Ferguson and Does have interfered with and violated [his] first (discarding legal materials and paperwork), fourth (discarding stealing personal property), eighth (destruction of property with nazi signs, nigger, penises drew/wrote on photos of dead relatives and the breaking of personal property while being forced to move into an unsanitary, unsafe, still in construction PHX prison that is dangerous to Plaintiff/Prisoners and staff [e.g., construction [equipment] everywhere; when electricity goes out there is no air coming in the cells and units making them resemble a sweatbox; cracks in walkways, cell floors, tiers patched with cement; the huge number of gates and doors make it impossible for medical to get to medical emergencies for Plaintiff/Prisoners and staff; human waste from the adjoining cell goes into the neighbors cell with every flush; if the bowel [movement] is too big, it will not go down the toilet, etc.]), ninth (Other Rights Retained by the People: violation of DOC Policy and the may Building and Safety Code violations present at the PHX prison), and fourteenth (due process and equal protection of the law) Amendments of the United States Constitution.

(*Id.*) Patterson predominately seeks damages and a declaration that his rights have been violated.

## II. STANDARD OF REVIEW

The Court grants Patterson leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the

---

[3] However, as Patterson is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

3

same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Patterson is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). For the following reasons, Patterson's Complaint fails to state a claim.

### A. Lack of Standing

Some of Patterson's allegations pertain to general conduct that occurred during the transition, but which did not affect him. "[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim. *See Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) (quotations omitted)). Specifically, "[t]o have standing to bring a claim in federal court, a plaintiff must show, inter alia, that he has 'suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.'" *Marin v. Leslie*, 337 F. App'x 217, 219 (3d Cir. 2009) (per curiam) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Patterson's description of CERT's conduct includes allegations regarding how CERT handled other inmates' property in addition to his own property. If Patterson sought

4

to raise claims based on harm suffered by other inmates to their legal or personal property on account of CERT, he lacks standing to do so. The Court will therefore dismiss any claims based on the Defendants' conduct that did not directly affect Patterson's property or cause him harm. Similarly, if Patterson is complaining of general conditions at SCI Phoenix that have not caused him harm, he lacks standing to raise those claims as well.

### B. Shutting Down the Grievance System

Patterson's allegations about shutting down the grievance system also do not state a claim. "Prison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam). Accordingly, although shutting down the grievance system would affect the analysis regarding whether Patterson properly exhausted his claims as required by the Prison Litigation Reform Act, it does not provide an independent basis for a constitutional claim.

### C. Use of Program Funds for Settlement

Patterson alleges that funds were directed from prison programming toward settlement of inmates' claims arising from the loss or destruction of property during the transfer. Patterson does not provide any additional allegations regarding what programs were lost or how the loss of those programs harmed him, so he has not stated a claim based on this generalized allegation. Furthermore, with regard to decisions about budget and programming, "[s]ubstantial deference must be given to prison administrators' judgment." *Young v. Beard*, 284 F. App'x 958, 961 (3d Cir. 2008) (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)). The Complaint, as pled, does not suggest that prison administrators made a constitutionally impermissible budgeting or programming choice. Accordingly, the Court will dismiss this claim.

### D. First Amendment Claims

The Court understands Patterson to be pursuing a claim under the First Amendment that he was denied access to the courts in connection with the destruction of his legal property. "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id.*

Here, Patterson has not described any injury suffered as a result of the destruction or loss of his legal property. He contends that he requires the lost legal materials "as he continues to challenge his criminal conviction and sentence and with various Appellate Courts requiring him to reproduce or to produce the original of certain pleadings, documents, opinions and rules," and that he does not have the money to pay for new copies. (Compl. at 7.) However, as far as the Court can tell, he does not have any motions pending in his criminal case nor does he have a *habeas* petition pending in this Court. It is also not clear how, if at all, his ability to pursue any future non-frivolous claims was adversely affected by CERT or the other Defendants' conduct. Accordingly, the Court will dismiss Patterson's First Amendment claim.

### E. Fourth Amendment Claims

Patterson also has not stated a claim under the Fourth Amendment. "[P]risoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration."). Accordingly, the events described by Patterson do not give rise to a Fourth Amendment claim. *See Kinard v. Bakos*, 566 F. App'x 102, 104 (3d Cir. 2014) (per curiam) (search of confidential legal mail did not give rise to a claim under the Fourth Amendment).

### F. Eighth Amendment Claims

Conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment if they satisfy two criteria. First, the conditions "must be, objectively, sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and internal quotation marks omitted). Second, the official responsible for the challenged conditions must exhibit a "sufficiently culpable state of mind," which "[i]n prison-conditions cases . . . is one of deliberate indifference to inmate health or safety." *Id.* Likewise, to state an Eighth Amendment claim based on the denial of medical care, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See id.* at 835. A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts

7

from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

### 1. Claims Based on Property

While the Court does not condone the intentional destruction of an inmate's property, the loss, theft, or destruction of Patterson's property does not equate to a sufficiently serious deprivation that would give rise to a claim under the Eighth Amendment. *See Young v. Edward*, No. 1:17-CV-1736, 2018 WL 4616245, at *3 (M.D. Pa. Sept. 26, 2018) ("The alleged destruction of personal property does not constitute a deprivation of the sort within the protection of the Eighth Amendment."); *Payne v. Duncan*, No. 3:15-CV-1010, 2017 WL 542032, at *9 (M.D. Pa. Feb. 9, 2017) ("Plaintiff's claim for destruction of property under the Eighth Amendment does not constitute a deprivation of life's necessities."), *aff'd*, 692 F. App'x 680 (3d Cir. 2017); *Dean v. Folino*, No. CIV.A. 11-525, 2011 WL 4527352, at *3 (W.D. Pa. Aug. 22, 2011) (allegations regarding destruction of property did not state Eighth Amendment claim), *report and recommendation adopted*, No. CIV.A. 11-525, 2011 WL 4502869 (W.D. Pa. Sept. 28, 2011). Accordingly, Patterson cannot state an Eighth Amendment claim based on CERT's destruction of his personal or legal property.

### 2. Claims Based on Overall Conditions

At the end of his Complaint, Patterson provides a list of conditions that he believes are unsafe at SCI-Phoenix. However, "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson v. Seiter*, 501 U.S. 294, 305 (1991).

Patterson indicates that there are cracks in the floor at SCI Phoenix that have been patched with cement. He alleges that if the electricity goes out, "there is no air coming in the

cells and units making them resemble a sweatbox," but it is not clear how often the electricity goes out or how long the electricity is out for. (Compl. at 8.) He also alleges that waste from the toilet in one cell travels through the toilet of an adjoining cell and that it is difficult to flush large bowel movements, but he did not identify any specific health problems arising from the situation with the toilets nor does he suggest that he was forced to live in squalor. *See Ridgeway v. Guyton*, 663 F. App'x 203, 205–06 (3d Cir. 2016) (per curiam) ("Although we do not doubt that the problem with the toilet was unpleasant, we must conclude, under the totality of the circumstances, that Ridgeway's complaint failed to allege the 'objectively, sufficiently serious' conditions of confinement necessary for a viable Eighth Amendment claim."). Patterson also suggests that the new prison is not designed to accommodate a medical emergency, but he does not allege any facts suggesting that he was deprived of medical care for any serious medical needs.

Importantly, Patterson has not described any harm he suffered that is specifically tied to the listed conditions. Rather, he lists a general group of conditions that, while perhaps unideal or uncomfortable, do not deprive him of a human need. Patterson simply has not developed his allegations to suggest that he has been subjected to an unconstitutional risk of harm to his health or safety. Accordingly, these allegations do not state a plausible constitutional violation. It is also not clear how the named Defendants are responsible for each of the conditions at the facility. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

### G. Ninth Amendment Claims

The Ninth Amendment states that "[t]he enumeration in the Constitution, of certain

9

rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. This Court is not aware of any authority that would provide a basis for a claim under the Ninth Amendment based on the destruction of an inmate's personal or legal property or the conditions of an inmate's confinement.

Indeed, courts have generally rejected Ninth Amendment claims raised by prisoners based on complaints about prison conditions. *Cf. Murray v. Bledsoe*, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam) ("Although there is some authority for the proposition that the Ninth Amendment is a source of fundamental rights . . . no court of which we are aware has held that the Ninth Amendment establishes a right to choose one's cellmate." (internal citation omitted)); *Parnisi v. Colorado State Hosp.*, 992 F.2d 1223 (10th Cir. 1993) (unpublished table decision) (observing that the Ninth Amendment "has never been applied to prevent the denial of medical treatment to prisoners"); *Muniz v. Goord*, No. 9:04-CV-0479, 2007 WL 2027912, at *9 (N.D.N.Y. July 11, 2007) (collecting cases). In any event, an institution's failure to abide by its own policies does not give rise to a constitutional claim. *See Jordan v. Rowley*, No. 1:16-CV-1261, 2017 WL 2813294, at *2 (M.D. Pa. June 29, 2017) ("[A] violation of an internal prison policy does not automatically rise to the level of a constitutional violation."). Accordingly, the Court will dismiss Patterson's Ninth Amendment claims.

### H. Fourteenth Amendment Claims

The Court understands Patterson to be pursuing a due process claim under the Fourteenth Amendment based on the destruction of his property. However, there is no basis for a due process claim because Pennsylvania law provides Patterson with an adequate state remedy. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural

10

requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984))); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property). Accordingly, Patterson has not stated a basis for a due process claim because state law provides him a remedy for his destroyed property.[4]

To the extent Patterson is raising an equal protection claim, that claim also fails. Nothing in Patterson's Complaint suggests that he was treated differently due to his membership in a protected class. Nor has he alleged that he was treated differently from others who were similarly situated. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (to state an equal protection claim on a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment"). To the contrary, it appears from the Complaint that Patterson is alleging that many other inmates were subjected to the same or similar conditions of which he complains. Accordingly, he has not alleged a basis for an equal protection claim.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Patterson's Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). In light of Patterson's *pro se* status, the Court

---

[4] The Court does not understand Patterson to be pursuing claims in this case under state law. Indeed, there is no apparent basis for jurisdiction over any state law claims as the criteria for diversity jurisdiction do not appear to be met here. *See* 28 U.S.C. § 1332(a). However, Patterson may seek to pursue any state law claims in state court. The Court expresses no opinion on the merits of any such claims.

11

will give Patterson an opportunity to file an amended complaint in the event he can state a plausible basis for a constitutional claim. An appropriate Order follows.

**BY THE COURT:**

*Petrese B. Tucker*

**PETRESE B. TUCKER, J.**